Donahue, J.
The disposition of this case involves a construction of Section 3 of Article XVIII of the Constitution of Ohio, as amended September 3, 1912, which section confers upon municipalities authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.
It is not only conceded, but insisted by counsel for the city of Cleveland, that the authority to fix rates that may be. charged for service rendered or commodity furnished by a public utility, is an exercise of police power.
This is necessarily true. If it were not, then neither the city nor the state would have authority to fix such rates. On the contrary, the amount to be charged would be the subject of private contract.
It is contended, however, that police power, in the narrow sense of the term, means power to prescribe *361 regulations for health, safety, and morals, and that the term “police regulations,” as used in Section 3 of Article XVIII of the Constitution, relates only to this narrow definition of police power; that the authority conferred by the constitution upon municipalities, to exercise all powers of local self-government, necessarily includes as incident 'thereto police power in the broader sense of that term, which authorizes the fixing of rates that may be charged by public utilities.
If it were conceded that police power may be restricted to this narrow meaning in one instance and given a broader meaning in another, it must follow that police power in the larger sense of the term would include the narrower or restricted meaning. In other words, the whole necessarily includes all its parts. This construction would make the further provisions of Section 3 of Article XVIII meaningless.
However that may be, there is no apparent reason whatever why the constitution should delegate to municipalities full authority to exercise police power in the broader sense of the term and then limit and restrict them in the exercise of local police power.
The exercise of local police power is of vital importance to large centers of population. If police powers may be divided along the lines suggested, it is of far more importance to municipalities that they should have authority to exercise local police power untrammelled by the general laws of the state, than that they should have absolute right to exercise the police powers included in the broader definition sug *362 gested by counsel for the city of Cleveland, yet Section 3, Article XVIII of the Constitution, does limit and restrict municipalities to the exercise of local police power in conformity with the general laws of the state.
Police power, however, cannot be divided along these lines or any other lines. There is no such, thing as municipal police power as distinguished from state police power. Such a proposition is too absurd to require argument to the contrary. Counsel make no such claim. Every court in Christendom since the establishment of civilized jurisprudence, without a single dissenting voice, has held that police power is a power that inheres only in the sovereign. Municipalities are not independent sovereignties, and therefore can exercise only such police power as the sovereign people of this state have in the constitution of Ohio delegated to them, and these powers must be exercised in the manner and form the constitution provides. If they were independent sovereignties, there might be some force in the contention that they possess inherent police powers incident to sovereignty, especially if the constitution imposed no limitations upon the exercise of that power, but even the most ardent supporters of independent sovereignty in the constitutional convention were obliged to abandon that idea. (2 Constitutional Debates, page 1456, column 2.) That question, however, is fully settled in the case of Billings v. Cleveland Ry. Co., 92 Ohio St., 478, 485, in this language:
“There is no imperium in imperio, except in the sense that by the approval of the state the city ex *363 ercises part of the sovereign power under the limitations imposed.”
While in this state, to meet the needs of urban districts, local police powers have uniformly been delegated to local authorities to be exercised in conformity with general laws, nevertheless, police power is an attribute of sovereignty, and the exercise of that power largely within the discretion of the sovereign state. •
This discretion, however, is fraught with danger to the personal and property rights of private individuals, and courts have uniformly interfered to restrain the arbitrary and unreasonable exercise of that power to the prejudice of private rights guaranteed by the constitution of the state. Mirick v. Gims, Treas., 79 Ohio St., 174, and Interurban Ry. & Terminal Co. v. Public Utilities Commission, ante, 287.
It is hardly within the range of possibility, much less probability, that the people of this state intended to vest in the many municipalities of Ohio discretion to exercise unlimited and unrestricted police power. The fact that the constitution does not confer such power in express words, is in and of itself sufficient to show that it was not the intent or purpose to do so. Especially is this true, in view of the fundamental doctrine announced in paragraph 3 of the syllabus in the case of State, ex rel. City of Toledo, v. Cooper, Auditor, 97 Ohio St., 86; but if this were not sufficient, the fact that the constitution itself expressly limits municipalities in the exercise of police power, certainly ought to end all controversy on that subject.
*364 In the case of State, ex rel. City of Toledo, v. Cooper, Auditor, supra, this court held that under the express provisions of Section 6, Article XIII, and Section 13, Article XVIII, of the Constitution of Ohio, the power of municipalities to levy taxes may be limited or restricted by general laws.
Paragraph 3 of the syllabus in that case reads as follows:
“Taxation is a sovereign function. The rules of liberal construction will not apply in cases where it is claimed a part of the state sovereignty is yielded to a community therein. It must appear-that the people of the state have parted therewith by the adoption of a constitutional provision that is clear and unambiguous.”
The exercise of police power is also a sovereign function, and therefore the .same rule of construction must apply.
It was strenuously urged by counsel for the city of Toledo that the right to levy taxes is vital to government and that the grant to municipalities, in Section 3 of Article XVIII, of authority “to exercise all powers of local self-government,” necessarily includes authority to levy taxes without interference upon the part of the state; notwithstanding Section 13 of Article XVIII specifically authorizes the general assembly of Ohio to limit by law the power of municipalities to levy taxes and incur debts for local purposes, and to require reports from municipalities as to their financial condition and transactions, and provides for the examination of the vouchers, books and accounts of all municipal authorities, or of public undertakings *365 conducted by such authorities. In this case exactly the same contention is made with reference to the right of municipalities to exercise police power independent of state control. The limitation in the constitution of the exercise of this power, however, is just as plain'and positive as the limitation upon its power to levy taxes. ■
The case of Interurban Ry. & Term. Co. v. Public Utilities Commission, supra, also involved the question of the jurisdiction of the utilities commission over public utilities within municipalities. In that case the court held that the state cannot be deprived of its right to the proper exercise of police power, and none of its subdivisions can bind itself by contracts which are or which may become deleterious to the peace, order, health or morals of the people; but that when the terms of a valid ordinance granting a franchise to a street or interurban railway company are accepted by the grantee, such action constitutes a contract between the parties, and as long as the company retains the franchise and operates its road thereunder its terms must control.
In the opinion in that case it is said:
-“Many authorities are cited in support of the proposition, which is familiar and well settled, that the state itself cannot by contract deprive itself of the proper exercise of police power. Its elastic and undefined nature is everywhere recognized, as well as the limitation upon its exercise as against rights guaranteed and protected by the constitution.”
In view of these authorities, and particularly in *366 view of the provisions of the bill of rights as written into Article I of the Constitution of Ohio, no mere presumption that the people of Ohio intended to divest the sovereign state of its control of the exercise of police power by the municipalities of this state can obtain. Certainly not where the constitution in terms provides that municipalities must exercise local police power in conformity with the general laws.
To hold that Section 3 of Article XVIII of the Constitution confers upon municipalities authority to exercise police power by local police regulations in conflict with the general laws of this state, notwithstanding the express provision of this section to the contrary, would be not only in disregard of every rule of construction heretofore established or recognized by this court, but the court, under the pretense of construction, would in fact be writing a new and different constitution of Ohio. This court has no desire or intention to assume such responsibility or usurp such power.
If there were any doubt, however, as to the correct interpretation of Section 3 of Article XVIII, that doubt is wholly removed by Section 4 of the same article, which expressly authorizes municipalities to contract with public utilities for the product or service which is or is to be supplied to the municipality or its inhabitants. If Section 3 grants to municipalities authority to exercise police power in conflict with the general laws of this state, and in the exercise of that power municipalities can fix an arbitrary rate that public utilities may charge for product or service supplied to the municipality *367 or its inhabitants, then of course there would be no necessity for contract; and there never would be any such contract, for the municipality would arbitrarily fix the price, and the utility would be compelled to accept the same. Therefore, this constitutional grant of power to municipalities to contract with utilities precludes the idea that the municipality has the power to fix such arbitrary price, regardless of the consent of the utility.
Certainly it was not the intention of the members of the constitutional convention, or of the electors of this state, to perpetrate such a monumental folly as to “authorize municipalities in one section of the constitution to fix arbitrarily a price that utilities might charge for a product or service and in another section authorize municipalities to contract with utilities, for in such case the entering into a contract would be a wholly useless performance on the part of a municipality.
It is clear from the constitutional debates that the members of the constitutional convention that framed the home-rule provision did not so understand it. The chairman of the committee that-drafted and presented to the convention these amendments to the constitution, speaking in reference to these amendments (2 Constitutional Debates, page 1456), said:
“If you will read this proposal carefully you will see that the state is dominant. The great powers of taxation, the great police power, and the great powers of education and of health, all are held with a firm hand by the state. You may liken the power of the state to a bank note, through *368 which the silken threads run strong and firm giving pliability but not permitting disintegration. That is the fundamental underlying principle of the proposal which you have to consider. The state is dominant in those principles in which, in the judgment of the committee, it should be dominant. Municipalities are given the greatest possible freedom, all of course protected and hedged in by these general fundamental principles.” In view of this plain, unchallenged statement <of the chairman of the committee, it is difficult to understand how it- can now be claimed that the constitutional convention intended to confer unrestricted" police power upon the municipalities of this state, or that the electors of Ohio so understood this amendment whep it was adopted as a part of the state constitution.
However, we must determine the intent of the electors of the state from the language used in the amendment itself. It was the right and privilege of each elector to read and determine for himself, from the language used therein, the meaning of the proposed amendment.
It is not the province of a court to write constitutions or to give to the language used such forced construction as would warp the meaning to coincide with the court’s notion of what should have been written therein. On the contrary, the language used must be given its usual and ordinary meaning.
In the case of Slingluff v. Weaver, 66 Ohio St., 621, it was held by" this court, in the second paragraph of the syllabus, that:
“The intent of the law-makers is to be sought first of all in the language employed, and if the *369 words be free .rom ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation. The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact. That body should be held to mean what it has plainly expressed, and hence no room is left for construction.”
This applies with equal force to the construction of a constitutional provision. If the result reached by the observance of this first and most important canon of construction falls short of the purpose and intent of the electors, the remedy is by amendment.
The language of Section 3 of Article XVIII, which confers upon municipalities of the state authority “to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with the general laws,” is plain, clear and unequivocal. The words “local police * * * regulations” require no construc-
tion. It would be idle to attempt to explain the meaning of this language in other words, for there are no other words that can better express their meaning.
It is said, however, that the phrase “local police regulations” does not mean “local police power.” It must be conceded, however, that “local police regulations” are the only means or methods for the exercise of “local police power;” so that the same result is reached regardless of any attempt to distinguish between the meaning of these two terms.
*370 If the exercise of power is restricted, it amounts to a limitation of the power itself. If, however, it were possible to distinguish between the terms “local police power” and “local police regulations,” the ordinance of the city of Cleveland, upon which this action for injunction is based, is beyond all question a local police regulation. It comes not only within the spirit, but the letter of the constitution.
Section 3 of Article XVIII must necessarily be construed with the other provisions of the constitution. Section 2 of Article XIII expressly grants to the general assembly of Ohio authority to pass general laws under which corporations may be formed, to classify such corporations and to confer upon proper boards, commissions or officers, such supervisory and regulatory powers over their organization, business and issue and sale 'of stocks and securities, and over the business and sale of the stocks and securities of foreign corporations and joint stock companies in this state, as may be prescribed by law.
This section of the constitution was adopted at the same time that Article XVIII was adopted. There is therefore no theory upon which it can be claimed that Article XVIII repeals by implication any provisions of Section 2 of Article XIII. On the contrary, the presumption obtains that both of these provisions should be given full force and effect; yet if Section 3 of Article XVIII is to be given the construction contended for by counsel for defendant in error, it would practically destroy the provisions of Section 2 of Article XIII, Clearly *371 no such result was intended either by the constitutional convention or the electors of the state.
For several years following the adoption of this amendment to the constitution, municipalities, the public utilities commission of Ohio, the public utilities of Ohio, and all others vitally interested, concurred in interpreting this provision to mean that the exercise of police power by municipalities must be subject to the general laws of the state. Municipalities, public utilities and private citizens invoked the jurisdiction of the public utilities commission, not only to fix rates but to ascertain the value of the property of public utilities used and useful for the service and convenience of the public. In fact, the city of Cleveland, the defendant in error in this case, by resolution of its council, adopted February 2, 1914, long after it had adopted a charter, requested the public utilities commission of Ohio to appraise the value of the property of The Cleveland Electric Illuminating Company, under authority, conferred upon that commission by Section 499-8, General Code, and the utilities commission proceeded to make such valuation. While that proceeding was pending, the council of the city of Cleveland fixed a rate to be charged by The Cleveland Electric Illuminating Company for power and light furnished by it to the citizens of Cleveland, and that company appealed to the utilities commission. Both the questions of valuation and rate were pending before the commission at the same time, without objection on the part of the city. The commission fixed the valuation, but did not fix the rate. To this order of the commission fixing the valúa *372 tion, the -city of Cleveland prosecuted error in this court. City of Cleveland v. Public Utilities Commission, post, 462.
The city of Cleveland not only conceded the jurisdiction of the utilities commission, but complained of its failure to hear and determine the question of rates at the same time it fixed the valuation.
In the case of The Lima Telephone & Telegraph Co. v. Public Utilities Commission, ante, 110, the city of Lima invoked the jurisdiction of the public utilities commission, challenging the rates, charges and classification in the schedule filed by The Lima Telephone & Telegraph Co. The utilities commission made an appraisement of the value of the company’s property and fixed rates that might be charged by that company. In that -case neither the city nor the utility questioned the jurisdiction of the commission. This court, all members concurring in the judgment, approved the order of the commission, both as to value and rates.
In the case of The Kent Water & Light Co. v. Public Utilities Commission, 97 Ohio St., 321, the utilities commission upon the request of the village of Kent appraised the property of the water and light company. After this valuation was settled, the water and light company appealed to the utilities commission from an ordinance of the village of Kent fixing the rates that the company might charge consumers. The commission fixed a different rate. The company prosecuted error in this court to this rate order. The village interposed, insisting that the order made by the commission *373 was reasonable and lawful. The cause was remanded to the utilities commission for a review of the appraisement.
In the case of the City of Cincinnati v. Public Utilities Commission, 96 Ohio St., 544, the council of the city of Cincinnati by resolution requested the public utilities commission to ascertain the value of the property of The Cincinnati Gas & Electric Company and The Union Gas & Electric Company, used and useful for the service and convenience of the public. The city prosecuted error in this court to the order of the commission fixing this valuation, but it did not question the jurisdiction of the utilities commission. This court, all members concurring, modified the order and affirmed the same as modified.
In the case of the City of Cincinnati v. Public Utilities Commission, Id., 270, it appeared from the record that on the 13th day of October, 1916, the council passed an ordinance fixing the rate to be charged for natural gas for five years; that the gas company accepted the ordinance, and agreed to abide and be bound thereby; that a referendum petition was filed October 30, 1916, which suspended the operation of the ordinance, so that no rate for natural gas was then in effect in that city; that the gas company filed a schedule with the public utilities commission; that the city of Cincinnati, through its solicitor, filed an application to strike this schedule from the files, and asked the public utilities commission to fix and put in force an emergency rate to be charged for natural gas in the city of Cincinnati, pending the referendum vote *374 on the ordinance, and that the utilities commission. refused to fix such emergency rate. The city thereupon prosecuted error to this court, and this court held that there was no such emergency contemplated by the provisions of Section 614-32, General Code, that would authorize action by the public utilities commission, and affirmed its order.
The question of the jurisdiction of the public utilities commission over public utilities operating within municipalities of this state was fully considered and determined in the case of City of Cincinnati v. Public Utilities Commission, 91 Ohio St., 331. That case did not involve the question of the authority of the utilities commission to fix rates, but it did involve the question of the authority of a municipality to exercise police power in the regulation of a local public utility, independent of the general laws of the state, and it did involve the jurisdiction of the public utilities commission of Ohio to regulate public utilities within the municipalities of the state. The city of Cincinnati passed an ordinance directing The Cincinnati Street Railway Company and The Cincinnati Traction Company to construct a double-track extension over a certain route within seventy days after the passage of the ordinance. The companies filed their complaint with the utilities commission, under the provisions of Sections 614-44 and 614-46, General Code, averring among other things that the requirements of the ordinance were unjust and unreasonable. The city of Cincinnati denied these averments. The utilities commission found that the additions and extensions required by the ordinance were not *375 practical, and entered an order relieving the street railway and the traction company from the obligations imposed thereby. The city of Cincinnati filed a petition in this court to review the order of the utilities commission. This court, all members concurring, held that the public utilities commission of Ohio is authorized to determine whether the requirements of such an ordinance are just and reasonable, and that the commission has authority to determine the practicability of additions and extensions of street railway lines required by city ordinance. Charter cities were not exempted from the operation of this decree.
The principle involved in that case is identical with the principle involved in this. True, Cincinnati had not then adopted a charter, but a charter is merely a vehicle for the exercise of municipal power and cannot confer authority upon a municipality in excess of the power conferred by the constitution itself. It is expressly provided in Section 7, of Article XVIII, that the exercise of powers of local self-government, under a charter adopted in pursuance of that section, shall be subject to the provisions of Section 3. However, the case of Stange v. Cleveland, 94 Ohio St., 377, cannot be distinguished from the case at bar upon any theory of charter or no charter, nor upon any theory of different charter provision. It is the same city, the same charter and the same question as to the authority of the city to exercise police power, and involves a construction of Section 3, Article XVIII of the Constitution of Ohio.
The city of Cleveland, on the 13th day of *376 October, 1914, passed an ordinance which provided that, except in case of extraordinary emei-gency, not to exceed eight hours should constitute a day’s work. Stange was arrested for violation of this ordinance, and demurred to the affidavit, the contention being that the ordinance conflicted with the general laws of the state and was therefore not authorized by Section 3 of Article XVIII of the Constitution of Ohio.
On the 28th day of April, 1913, the general assembly passed an act providing that eight hours should constitute a day’s work, but it was provided that “this act shall be in force and applicable to all contracts let on or after July 1, 1915.”
The contract upon which Stange was working, was let April 30, 1914. This court, all members concurring, held that the effect of the provision in the eight-hour law, by which its operation was delayed until July 1, 1915, was the same as if the state had enacted no law on the subject, and that the city was free to make such local police regulations as it saw fit. But the court said, at page 381: “If, after the statute became effective, the ordinance should conflict in anywise with it, the ordinance of course must yiel<J.” The court further said, at page 379: “The ordinance is a local police regulation applying only to the municipality in which it was passed, but if this local regulation conflicts with the general law it is invalid.” This construction of Section 3, Article XVIII, concurred in by every member of this court, fully and finally disposes of this case.
Counsel for the city of Cleveland did not con *377 tend in that case that the city should exercise police power in conflict with the general laws of the state, but on the contrary contended in their printed brief . that “the framers of the constitution intended to delegate the primary control of police regulation to the general assembly. It was their manifest intention in the drafting of Section 3, to prescribe the limits of the police regulations municipalities could make and enforce. There must be no conflict with the state law.”
To the same effect is the holding of this court, all members concurring, in the case of City of Fremont v. Keating, 96 Ohio St., 468, that Section 3 of Article XVIII of the Constitution of Ohio authorizes municipalities to adopt and enforce within their limits police power not in conflict with the general law, and that Section 6307, General Code, which provides that local authorities shall not regulate the speed of motor vehicles by ordinance, by-law or resolution, is in direct conflict with this provision of the constitution, and void. The judgment in that case was approved in the cases of Greenburg v. Cleveland and Stein v. Cleveland, ante, 282.
Counsel for the city of Cleveland, in support of •the city’s position, cite the case of Billings v. Cleveland Ry. Co., supra. In that case it was held by this court that the city of Cleveland under its charter had. the authority to grant to street railways the permission to construct their railways on streets in the city, without the consent of a majority of the abutting property owners, as required by Sections 3777 and 9105, General Code. That case, *378 however, did not involve any question of the exercise of police power. It was specifically stated in the opinion that the granting of a right to street railway companies is purely a governmental function; that in municipalities the fee of the streets is in the city or village in trust for street purposes; that the abutting lot. owners have no property rights in the street except the right of ingress and egress to their premises; that the use of streets for street railway purposes is not an additional burden on the rights of abutting property owners.
Police power is the power to impose restrictions upon the personal or property rights of private persons. If, therefore, abutting lot owners have neither a personal nor a property right in the streets, the grant to a street railway company of the right to lay its tracks in the streets, does not involve the exercise of police power, but is solely and only a governmental function. This is especially emphasized in the opinion, page 491, in this language:
“In considering the statute which requires the filing of consents of property owners prior to the granting of permission to erect a railroad in the street, it must be noted that there is no property right involved.”
And by the second paragraph of the syllabus care is taken to protect a property owner where the “public utility is of such a character that its construction and operation is an additional burden on his rights.” Both in the opinion and the syllabus in the case of Billings v. Railway Co., supra, the distinction between the question involv *379 ed in that case and one involving the exercise of police power, is so clearly explained that no unprejudiced mind can read this opinion intelligently without understanding this difference.
Many other cases of the same character might be cited, but the foregoing are sufficient to show the uniform construction given to this provision of the constitution, not only by this court but also by those most vitally interested in its provisions.
Notwithstanding that for several years following the adoption of this amendment to the constitution this construction of Section 3 of Article XVIII universally obtained, it is now insisted that it absolutely deprives the home-rule amendment of all value, and that municipalities have no further authority of local self-government than they had under the conditions that obtained prior to the adoption of this amendment.
If this be true, it is strange that this thought did not occur to some of the officers of the municipalities of this state, when they were invoking the jurisdiction of the utilities commission and insisting upon the right to exercise police power concurrently with the state and in conformity with the general laws of the state. We cannot, however, concur in the proposition that the result will be disastrous to home rule.
Article XVIII of the Constitution of Ohio as amended September 3, 1912, does confer upon municipalities the right to exercise all powers of local self-government. Subject only to the limitations that local police, sanitary, and other similar regulations shall not conflict with general laws, as *380 found in Section 3, and the further limitations of the power to levy taxes and incur debts for local purposes, and the authority of the state to require reports from municipalities as to financial conditions and transactions, and examine vouchers, books apd accounts, as provided in Section 13, a municipality has full authority under the home-rule amendment to meet every problem of municipal government. ,
These limitations have been written into the constitution by the people of Ohio. Whether wise, or unwise, it is not within the province of a court to eliminate them upon the theory that municipalities should have full authority to exercise police power, levy taxes or incur debts at will. It may be possible to urge many good reasons why the home-rule amendment should not have contained these limitations upon the governmental powers granted to municipalities. The answer, however, is that it does contain these limitations, and that courts must give them full force and effect. In other words, municipalities cannot take advantage of the benefits conferred by Article XVIII of the Constitution, and reject the limitations imposed thereby.
This article of the constitution grants to municipalities as full and complete authority to exercise all powers as it is possible to grant to them without erecting each municipality into an independent sovereignty, wholly separate and apart from the state. The people of this state refused to do this; certainly a court ought not to do so by a construction wholly at variance with and in defiance of the *381 plain, positive and unambiguous language used in the constitution 'itself.
Not only does Article XVIII confer upon municipalities full authority to exercise all powers of local self-government, subject only to the limitations above mentioned, but it confers this authority direct. It meets and remedies every evil that obtained in legislative control of municipalities prior to the adoption of this amendment. The general assembly of Ohio can no longer play battledore and shuttlecock with the municipalities of this state. It can control them in the exercise of police power, in the levy of taxes and in the incurring of debts. Further than that, the governmental powers of municipalities are fixed, positive and certain, and can be changed only by amendment of the constitution itself.
Counsel for the city of Cleveland predicate the right of that municipality to fix telephone rates squarely upon the provisions of the charter of that city. It is conceded, of course, that this charter cannot confer a power upon a municipality in addition to the power conferred by the constitution itself. Section 4 of Article XVIII authorizes a municipality to acquire, own, lease and operate a public utility within or without its corporate limits, the product or service of which is or is to be supplied to the municipality or its inhabitants. The first section of the charter of the city of Cleveland authorizes the city to acquire, construct, own, lease, operate and regulate public utilities. Section 4, Article XVIII of the Constitution, does not au *382 thorize a municipality to regulate public utilities, and therefore Section 1 of the charter is in excess of the authority conferred upon municipalities by that section of the constitution. If this authority found in Section 1 of the charter of Cleveland, authorizing the city to regulate public utilities, is a valid constitutional provision, the authority for such charter provision must be found in Section 3 of Article XVIII. This is conceded by counsel for the city of Cleveland, but it is the claim of counsel that this section must be interpreted in connection with the other provisions of Article XVIII. This of course is the correct rule of construction, but there are no other provisions in Article XVIII that either add to or take from the grant of municipal powers in Section 3 thereof. That section is plain and positive in its terms.
The jurisdiction of the public utilities commission of Ohio, to fix rates of a public utility operating within a municipality of this state, was challenged for the first time in the case of The Marysville Water & Light Co. v. Public Utilities Commission, 93 Ohio St., 480. In that case the council of the village of Marysville passed an ordinance fixing the rates to be charged for light and power during the next five years. The light and water company filed a written acceptance of this ordinance. Later, thirty-five of the electors of Marysville, being more than three per cent, of the qualified electors of that village, filed a complaint with the public utilities commission, designated as a petition and appeal, asking the utilities commission to fix a proper rate, price, charge, toll *383 or rental to be taken, exacted or collected by the company for light and power furnished to the consumers. The Marysville Water & Light Company brought an action in this court to restrain the utilities commission from acting upon this complaint, upon the theory that Section 614-44, General Code, is in conflict with Section l/'of Article II of the Constitution, which provides that the initiative and referendum powers are reserved to the people of each municipality in all questions which such municipalities may now or hereafter be authorized by law to control by legislative action. A demurrer to this petition was sustained upon the theory that this court has no original jurisdiction in an action in which an injunction is the sole relief sought.
In the case of Cincinnati v. Public Utilities Commission, ante, 320, the city of Cincinnati passed an ordinance fixing the price to be charged for natural gas at thirty cents per thousand cubic feet. The gas and electric company filed with the public utilities commission of Ohio a complaint against the rate fixed in this ordinance. The city filed its application and motion to dismiss this complaint, for the same reasons stated in the petition in the case of The Marysville Water & Light Company v. Public Utilities Commission, supra. After the case now under consideration was filed in this court, a reply brief was filed on behalf of the city of Cincinnati, raising the same questions that are presented in this case. This court, however, did not agree with the contention of counsel for the city of Cincinnati, that the utilities commission has no jurisdiction to fix rates that may be charged by a public utility *384 operating within the limits of a city having adopted a charter. On the contrary it held that the original franchise ordinance constituted a contract between the utility and the city of Cincinnati, and that “Statutes in force at the time a contract is made by a municipality enter into and become a part of the contract. Its obligation is to be measured, and performance is to be regulated, by the terms of the rules which they prescribe.”
Paragraph 7 of the syllabus of that case reads as follows:
“The provisions of Section 614-44, General Code, were not intended to and do not apply to a contract made prior to the passage of that section and which, by its terms, does not expire for more than one year.”
This language clearly contemplates that in the absence of such contract the provisions of Section 614-44, General Code, would apply.
In the case of State, ex rel. Zielonka, City Solicitor, v. Marshall et al., post, 467, a petition was filed in this court on the 23d day of April, 1918, asking that a writ of prohibition issue against the utilities commission of .Ohio, prohibiting and restraining that commission from hearing and determining a motion filed by The Union Gas & Electric Co. and The Cincinnati Gas & Electric Co., in Cause No. 564 pending before that commission, to modify an order made and entered by the utilities commission on January 26, 1917, for the reason that that order was entered in pursuance and furtherance of an agreement of settlement entered into between the utilities named and the city of *385 Cincinnati, and that, therefore, the same is not only an order of the utilities commission, but a contract between the city of Cincinnati and The Union Gas & Electric Co. and The Cincinnati Gas & Electric Co., and for the further reason, that the city of Cincinnati, on the 17th day of April, 1917, adopted a charter in accordance with the provisions of Article XVIII of the Constitution of Ohio, under the provisions of which the council of the city of Cincinnati is authorized to fix the rate that may be charged by a public utility for commodity or service furnished to the municipality and its citizens. In that case, this court did not sustain the contention of the city of Cincinnati, that the utilities commission of Ohio is without jurisdiction because that city had adopted a charter authorizing its council to fix rates that may be charged by public utilities for commodity furnished or services rendered to the municipality and its inhabitants, but it did find that the contract of settlement between the city and the utilities named, in pursuance of which the order of the utilities commission was entered, was and is a binding and subsisting contract between the parties thereto, and for that reason the utilities commission has no authority to change the rate fixed by that contract during its term.
The determination of the question in this case involves the construction of the language used in our own constitution. For that reason, authorities from other states would not be helpful, except in so far as they discuss the principle here involved. *386 It is sufficient to say that the authorities in other states are practically unanimous in holding that municipalities' may exercise police power in conformity with the general laws of the state. It is claimed that California is an exception to this rule, but Section 6 of Article XI of the Constitution of California expressly provides that “All charters * * * framed and adopted by authority of this constitution, except in municipal affairs, shall be subject to and controlled by general laws.”
This provision of the constitution of California would seem to except municipal affairs from the control of general laws, while in Ohio the constitution, in just as explicit terms, provides that municipalities may adopt and enforce police regulations not in conflict with the general laws.
Notwithstanding the provisions of Section 6 of Article XI of the Constitution of California, the supreme court of the United States held in the case of Home Telephone & Telegraph Co. v. Los Angeles, 211 U. S., 265, that “Only the legislature of a state, or a municipality specifically authorized thereto by the legislature, can surrender by contract a governmental power such as fixing rates,” and that the constitutional provisions above referred to conferred no such power upon the municipalities of that state.
It is further contended on behalf of the telephone company that it is not a local public utility, but that it is operating within and without the city of Cleveland and has established long-distance communication with other parts of the state, and that for this
*387 reason it should be distinguished from public utilities of a purely local nature.
This question, however, is unimportant in the determination of this case.

Judgment reversed,

Nichols, C. J., Newman, Jones and Matthias, JJ., concur.